KOGAN, Justice,
concurring.
Our law has held that, with respect to unmarried persons, “chaste” means possessing virginity. Williams v. State, 92 Fla. 125, 109 So. 305 (1926). Thus, by its own terms the statute at issue here does not protect unmarried minors who had lost their virginity through a liaison with a third party prior to the act in question. This singularly odd state of affairs indicates that the real objective of this statute is not to protect children as a class, but to prevent the loss of chastity of those not already “despoiled.” Any person — child or adult — thus does not violate this particular statute by a sexual liaison with an unchaste minor.[2]
I frankly find the assumptions underlying this result appalling. As I stated in Jones, the state does have a compelling interest in preventing the sexual exploitation of children as a class and can do so by establishing a minimum age of consent. The problems of pregnancy, sexually transmitted disease, and psychological injury are of special concern with the very young, as a body of well documented research now shows. Jones, 640 So.2d at 1087-92 (Kogan, J., concurring). But I am utterly at a loss to explain how the state can justify a statute such as this one, that seems to regard unchaste minors as *261 being somehow less deserving of the state’s protection than those who are otherwise. This view is a painfully short-sighted relic of a bygone era that was willing to punish non-marital sexual acts severely, even to the point of regarding the innocent offspring of those unions as “children of no one” not even entitled to an inheritance. Any statute that purports to grant special status to a favored group of children over all others, to my mind at least, must be regarded as inherently questionable. On its face this statute suggests discrimination and most likely grants special status to an elite group of children.
Laws should protect everyone, not merely a favored subgroup. All children deserve the state’s protection, subject only to the rights our Constitution invests in those children and their parents or guardians. I agree with the majority that privacy is implicated here. However, the statute’s application only to “chaste” children renders the state’s interest less than compelling, in the context of sex between two minors. There is no sound reason why only the chaste ones should be protected from the dangers of premature and repeated sexual acts if the state genuinely purports to be protecting children as a class. Indeed, one of the assumptions of this statute — that children engaging in serial promiscuity are less deserving — strikes me as patently absurd and self-defeating. If anything, such children are all the more in danger and thus all the more in need of assistance.
I also am highly puzzled about who should be regarded as the “aggressor” and who the “victim” when both partners are minors. If both are “chaste,” then a fair reading of the statute would indicate that both have committed a felony. Yet, this effectively means each child was both aggressor and victim in a single act, which stretches credence to the breaking point. Attempting to brand one as the aggressor and the other as the victim raises very serious questions of equal protection, especially where prosecutors always assume that one type of child — such as “the boy,” or the one who is “unchaste” — must be the aggressor.
Moreover, still other problems arise in this last situation. Identifying the male or “unchaste” partner as the aggressor will not always be borne out by the facts. The studies I cited in Jones indicate that some children — even boys — fall into a tragic cycle of sexual exploitation by others, which robs them of virginity but certainly does not indicate they are aggressors. And I am utterly unwilling to say that repeat victims of sexual exploitation must be considered aggressors merely because of prior victimization by third parties. This would be little better than blaming the true victim and coddling the actual aggressor, directly contrary to the very interests the state is trying to serve.
In so saying, I stress that this case does not involve the separate problem of adults engaging in sexual acts with a minor, nor does the certified question raise issues of due process or equal protection. This opinion accordingly rests solely on a privacy analysis. Art. I, § 23, Fla. Const. Finally, I would suggest that the legislature revisit this statute and either modernize it or decide if it is genuinely necessary in light of the variety of other statutes more than adequately protecting children from sexual predation. Absent revision, application of this statute in other situations is likely to be a fertile source of expensive litigation in the years ahead. The legislature might wish to consider whether the cost of defending an archaicly worded statute such as this one is worthwhile.
ANSTEAD, J., concurs.

. A variety of other criminal statutes might apply, however, depending on the facts of the case. I also must note that, while Chief Justice Grimes correctly quotes my concurrence in Jones, the two statutes he compares differ in a crucial respect: Section 794.05 requires that the child be chaste whereas section 800.04 does not. Indeed, the latter statute states in pertinent part:
Neither the victim’s lack of chastity nor the victim’s consent is a defense to the crime proscribed [statutory rape].
§ 800.04, Fla.Stat. (1991). Thus, I do not agree with his assessment that my concurrence in Jones compels the result he advocates. In Jones, the state in fact had a compelling interest because it was trying to protect all children, whereas in the present case the state has selected a privileged few for favored protection. The question in the instant case thus is whether the state can select a subgroup of children for special protections not afforded to others.